UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

   v.                         Criminal No. 06-cr-099-JD
                                     Opinion No. 2006 DNH 083

<u>David Luedecke</u>

O R D E R

David Luedecke has moved to dismiss the criminal charges against him with prejudice on the ground that the government has failed to bring him to trial promptly in violation of the Speedy Trial Act, 18 U.S.C. § 3161.[1]  The government objects.

Background

In an indictment returned in this court on July 13, 2005, Luedecke was charged with a single count of bank fraud in violation of 18 U.S.C. § 1344.[2]  The indictment alleged that Luedecke wrote a number of checks on an account he held at Citizens Bank between approximately August 2004 and October 2004, knowing that the account had insufficient funds to cover them. At the time of his indictment, Luedecke was in the custody of the

_____

[1]Luedecke's motion and supporting memorandum also invoke the Sixth Amendment, but he presents no argument whatsoever in support of such a theory.  In any event, any Sixth Amendment claim is largely moot, for reasons which will appear.  <u>See</u> <u>infra</u> note 7.

[2]This matter was assigned docket no. 05-cr-130-JD.

state of New Hampshire, awaiting trial on "unrelated charges involving a vehicular assault on a New Hampshire State Trooper." Obj. Mot. Dismiss at 1.  The government filed a detainer with Luedecke's custodians for the purpose of alerting him to the pending charge in this court.  See 18 U.S.C. § 3161(j)(1)(b).

On December 21, 2004, Luedecke waived his right to appear at his arraignment and entered a plea of not guilty on the bank fraud charge.  Trial was then scheduled to commence on February 22, 2006.  Following the government's response to Luedecke's request for discovery on February 8, 2006, the parties discussed the terms of a possible plea bargain, but, according to Luedecke, did not "come close to reaching an agreement."  Mem. Supp. Def.'s Mot. Dismiss ¶ 11.  Luedecke's counsel informed the court on February 21, 2006, that trial would proceed the next day as scheduled.  Later that day, however, the government moved to dismiss the indictment without prejudice pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure.  In its motion, the government explained that it intended "to offer the grand jury a superseding indictment that include[d] additional schemes to defraud," and had not done so earlier "because it believed the parties, who were negotiating a plea, would resolve the issues in dispute."  Gov't Mot. Dismiss at 1.  The court granted the motion that day, without any objection from Luedecke.

The government did in fact procure an indictment charging Luedecke with further crimes, which was returned on May 24, 2006.

In addition to the charge contained in the first indictment, which serves as Count I of the present indictment, Luedecke is charged with two additional counts of bank fraud, also in violation of 18 U.S.C. § 1344.  Count II alleges that, between late June 2005 and August 2005, Luedecke induced one David Buckley, who had his own Citizens account, "to issue checks from the account to purchase merchandise from retail businesses knowing there were insufficient funds in the account."  Indict. ¶ 10.  According to the indictment, Luedecke and Buckley would then sell the merchandise to third parties and split the profits between themselves.  Count III alleges that, between August 2004 and September 2004, Luedecke participated in a nearly identical scheme with one Michael Nudd, using that man's account at the New Hampshire Federal Credit Union.

By the time when the second indictment was returned, Luedecke was in the custody of the New Hampshire State Prison, so the government secured his appearance at his arraignment through a writ of habeas corpus ad prosequendum.  At the arraignment, held May 30, 2006, Luedecke entered a plea of not guilty and stipulated to his detention pending trial, which was set to commence on July 18, 2006.  On June 28, 2006, Luedecke filed the instant motion to dismiss the indictment.  The court then continued the trial until August 1, 2006, pending a ruling on the motion.  See 18 U.S.C. § 3161(h)(1)(F).

Discussion

I.   Whether a Violation of the Speedy Trial Act Occurred

Under the Speedy Trial Act, in relevant part, the trial of a defendant charged in an indictment must commence within seventy days of the filing of the indictment, or the defendant's first appearance in the court where the charge is pending, whichever occurs later.  18 U.S.C. § 3161(c)(1).  When an indictment is dismissed upon motion of the defendant, and the government then re-indicts for "the same offense or an offense based on the same conduct or arising from the same criminal episode," the seventy-day period starts anew.  Id. § 3161(d)(1).  "When the government voluntarily dismisses charges, however, . . . the Speedy Trial Act . . . excludes only the time between indictments, and not the time during the pendency of the first indictment."  United States v. Colombo, 852 F.2d 19, 23 (1st Cir. 1988) (citing 18 U.S.C. § 3161(h)(6)); see also, e.g., United States v. Lozano, 413 F.3d 879, 882 (8th Cir. 2005); United States v. Osteen, 254 F.3d 521, 525–26 (4th Cir. 2001); United States v. Broadwater, 151 F.3d 1359, 1360 (11th Cir. 1998).

Luedecke asserts that, by operation of this rule, the seventy-day period on the charges set out in the present indictment began running on December 21, 2005, when he waived his formal arraignment on the charge set out in the first indictment. Because only the span between the dismissal of that charge and his arraignment on the present charges is excludable, he argues,

4

"well over 70 days has elapsed and the government has not brought [him] to trial."  Mem. Supp. Def.'s Mot. Dismiss ¶ 26.  The government does not dispute that December 21, 2005, serves as the commencement date for the seventy-day period, but argues that the entire period of time during the pendency of the first indictment is otherwise excludable by virtue of 18 U.S.C. § 3161(h)(1)(D).[3]

When a defendant moves to dismiss an indictment under the Speedy Trial Act, he or she "shall have the burden of proof of supporting such motion but the government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3)."[4]  18 U.S.C. § 3162(a)(2).  Although this provision, by its terms, shifts the burden to the government only in the case of this particular subparagraph, some courts have held that the government simply bears the burden of supporting an exclusion of time under any of the statutory exclusions.  See, e.g., United States v. Jenkins, 92 F.3d 430, 438 (6th Cir. 1996); United States v. Woolfolk, 2005 WL 2100933, at *3 (W.D. Va. Aug. 31, 2005); United States v. Martinez, 75 F. Supp. 2d 360, 363 (D.N.J. 1999).  Other courts have simply stated, regardless of the government's reliance on exclusions other than section 3161(h)(3), that the defendant

---

[3]The government does not invoke any of the Act's other exclusions.  See 18 U.S.C. §§ 3161(h)(1)-(h)(8).

[4]This provision excludes period of delay resulting from the absence of the defendant or an essential witness.

retains the burden to show a violation of the Act.  See, e.g.,
United States v. Cordova, 157 F.3d 587, 599 (8th Cir. 1998);
United States v. Neal, 27 F.3d 1035, 1042 (5th Cir. 1994); United
States v. Pasquale, 25 F.3d 948, 951 (10th Cir. 1994).

Neither party has addressed this issue, which has also not
been squarely decided by the First Circuit.  In United States v.
Barnes, 159 F.3d 4 (1st Cir. 1998), however, the circuit refused
to "turn the Act on its head by shifting the burden of enforcing
the Act to the defendant," rejecting the government's argument
that the defendant's failure to object to the court's apparent
sua sponte continuance of her trial rendered the subsequent
period excludable.  Id. at 12–14 (discussing United States v.
Pringle, 751 F.2d 419, 434 (1st Cir. 1984)).  The court also
noted in this regard that "[t]he reasons for this delay ha[d] not
been made clear by the guardians of the speedy trial clock:  the
court, and to a lesser extent, the government."  Id. at 14.
Based on the circuit's observations in Barnes, and given the
government's failure to address the issue, the court concludes
that the government bears the burden of showing that section
3161(h)(1)(D) applies.

Section 3161(h)(1)(D) excludes from the seventy–day period
"[a]ny period of delay resulting from other proceedings
concerning the defendant, including but not limited to . . .
delay resulting from trial with respect to other charges against
the defendant . . . ."   The government argues that, because

6

Luedecke "was in the custody of the State of New Hampshire on
unrelated charges for the entire time up to the dismissal of the
[first] indictment," section 3161(h)(1)(D) excludes that period
from the Speedy Trial Act computation.  Obj. Mot. Dismiss at 6.
By its terms, however, section 3161(h)(1)(D) applies to "delay
resulting from <u>trial</u> with respect to other charges," not "delay
resulting from <u>incarceration</u> with respect to other charges."

The government does not provide any authority supporting its
reading of section 3161(h)(1)(D).  The sole case it cites, <u>United
States v. Rush</u>, 738 F.2d 497 (1st Cir. 1984), does not support
its position.  In <u>Rush</u>, the First Circuit simply noted the
defendants' concession that "the time from the commencement of
[their unrelated] trial . . . through its conclusion . . . was
excludable" by virtue of section 3161(h)(1)(D).  <u>Id.</u> at 506.
Here, however, the government does not seek to exclude only that
part of Luedecke's detention by New Hampshire authorities (if
any) that he actually spent at trial, but the detention in its
entirety.  <u>Rush</u> is therefore inapposite.

To be sure, other circuits have treated the period of a
defendant's pre-trial custody on state charges as excludable
under the Speedy Trial Act.  <u>See</u> <u>United States v. Nesbitt</u>, 852
F.2d 1502, 1513 (7th Cir. 1988), <u>overruled on other grounds</u>,
<u>United States v. Durrive</u>, 902 F.2d 1221 (7th Cir. 1990); <u>United
States v. Bigler</u>, 810 F.2d 1317, 1320 (5th Cir. 1987); <u>United
States v. Lopez-Espindola</u>, 632 F.2d 107, 110 (9th Cir. 1980);

7

United States v. Goodwin, 612 F.2d 1103, 1104–05 (8th Cir. 1980);
but see United States v. Oliver, 523 F.2d 253, 260–61 (2d Cir.
1975) (Lumbard, J., concurring) (reasoning that Second Circuit
"prompt disposition" rule similar to § 3161(h)(1) did "not extend
time in which the government must be ready to try a federal
defendant by that period of time during which state criminal
proceedings are pending against the defendant, unless the
government has made reasonable efforts to ensure the presence of
the defendant").  But these courts have stopped short of adopting
any per se rule to that effect, as the Ninth Circuit's decision
in Lopez–Espindola makes clear.[5]

        In Lopez–Espindola, the court observed that "[a]nyone
familiar with trial practice is aware of the fact that 'delay
resulting from trial' not only involves the trial itself but also
the period of time utilized in making necessary preparation for
trial."  632 F.2d at 110.  Rather than equating this period with
the period of the defendant's pre–trial detention in all cases,
however, the court simply held that "it is within the sound
discretion of the trial court judge to determine that period of
delay resulting from trial with respect to other charges and that

────────────────

        [5]In a related context, courts have similarly declined to
"hold that a pending state prosecution in any sense tolls the
running of the Sixth Amendment period of delay."  United States
v. Thomas, 55 F.3d 144, 151 (4th Cir. 1995); see also United
States v. Schreane, 331 F.3d 548, 555 (6th Cir. 2003).

on the facts of this case the exclusion of the period [between the defendant's arrest and acquittal on the state charge] was not improper." Id. (emphasis added).  The Seventh and Fifth Circuits subsequently adopted Lopez-Espindola's reading of section 3161(h)(1)(D).  United States v. Montoya, 827 F.2d 143, 149 & n.8 (7th Cir. 1987); Bigler, 810 F.2d at 1320.

Thus, even those courts that have excluded the entire period of a defendant's pre-trial detention by the state as "delay resulting from trial on other charges" have not treated that time as "automatically excludable" in the manner the government suggests.  Obj. Mot. Dismiss at 6.  Instead, under the approach set forth in Lopez-Espindola and its progeny, time spent in the custody of state authorities awaiting trial on other charges is excluded to the extent it has been "utilized in making necessary preparation for trial."  632 F.2d at 110.

In many cases, of course, the two measurements will completely overlap.  See, e.g., Nesbitt, 852 F.2d at 1513 (relying on Montoya "to exclude all time periods during which the defendant was unavailable to the federal court because of his involvement in state proceedings relating to his [state] murder charge"); Goodwin, 612 F.2d at 1104-05 (treating whole thirteen days defendant spent in state custody "awaiting trial with respect to armed robbery charges" as "other proceedings concerning the defendant" under § 3161(h)(1)); United States v. Allsup, 573 F.2d 1141, 1144 (9th Cir. 1978) (excluding "vast

majority of the delay between arraignment and trial [as] caused
by the pendency of [a] bank robbery prosecution in Oklahoma,"
including defendant's "extensive psychiatric testing").  Here, in
contrast, there is no basis for equating the entirety of
Luedecke's detention by state authorities with delay resulting
from trial on other charges.  The government has said only that
Luedecke "was incarcerated by the State of New Hampshire on
unrelated charges involving a vehicular assault on a New
Hampshire State Trooper [and] held by the State in pretrial
confinement at the Valley Street jail" during the pendency of the
first indictment.  Obj. Mot. Dismiss at 6.  The record is silent
as to what portion of this time was actually spent trying, or
preparing to try, those charges.

Accordingly, the government has failed to carry its burden
to show that the period of Luedecke's pre-trial detention is
excludable under section 3161(h)(1)(D).  The court recognizes
that reading this provision to include periods of the defendant's
state pre-trial detention outside of the actual trial serves in
part to relieve the government of the potentially onerous
responsibility "to monitor the state proceedings 'and to keep the
district court informed of how expeditiously' they were being
conducted."  Bigler, 810 F.2d at 1320 (quoting Lopez-Espindola,
632 F.2d at 110).  But the government must nevertheless "exercise
a reasonable scrutiny over the progress of the state court
proceedings" after it procures an indictment against a defendant

who is already in state custody, Lopez–Espindola, 632 F.2d at
111; it cannot simply ignore a defendant's time in pre–trial
detention on state charges for purposes of his or her statutory
right to a speedy trial on pending federal charges.

As the First Circuit has cautioned, "neither counsel nor
district courts may employ measures for excluding time from the
speedy trial clock that impermissibly frustrate [the Act's]
purpose of protecting the shared interest of criminal defendants
and the public in bringing criminal charges to the bar of justice
as promptly as practicable."  United States v. Richardson, 421
F.3d 17, 29 (1st Cir. 2005) (internal quotation marks omitted);
see also Barnes, 159 F.3d at 14 (noting that government has duty
to watch Speedy Trial clock and explain reasons for delays);
United States v. Rodriguez, 63 F.3d 1159, 1165 (1st Cir. 1995)
(declining to adopt rule "treating as excludable time an extended
delay attributable solely to the government's unexcused failure
to comply with a court–ordered briefing schedule" because "[t]he
dangers of potential abuse lurking behind such a broad rule of
exclusion are plain").  Because the government has failed to
demonstrate that Luedecke's stint in the custody of New Hampshire
authorities is excludable under section 3161(h)(1)(D), even under
the broad reading of the provision followed in some circuits, the
court need not decide whether to adopt that reading despite the
absence of any First Circuit guidance in this area.  The court
concludes that Luedecke has not been brought to trial within

seventy days of his initial appearance on the charge set forth in the first indictment in violation of 18 U.S.C. § 3161(c)(1).

II.   The Appropriate Remedy for the Violation

    A.   Whether All of the Charges Should Be Dismissed

        Luedecke argues that this transgression requires dismissal of the instant indictment in its entirety.  The government rejoins that the seventy-day period on Counts II and III of the indictment did not begin to run until his first appearance on those charges, as opposed to the charge originally set forth in the first indictment and repeated as Count I of the instant indictment.  In support of this position, the government relies on United States v. Alford, 142 F.3d 825 (5th Cir. 1998), where the Fifth Circuit has held that "a new speedy-trial clock begins for new offenses charged in the superseding indictment [that the double jeopardy clause would not require the government to join with the original charges,] when the indictment retains some of the original charges."[6]  Id. at 829; see also United States v. Kelly, 45 F.3d 45, 48 (2d Cir. 1995); United States v. Lattany,

_____

        [6]Although this case dealt with a superseding indictment, courts have generally treated a superseding indictment as equivalent to the filing of a second indictment following the dismissal of a related, earlier indictment when resolving Speedy Trial Act problems.  See, e.g., United States v. Van Someren, 118 F.3d 1214, 1219 (8th Cir. 1997); United States v. McKay, 30 F.3d 1418, 1420 (11th Cir. 1994); United States v. Roman, 822 F.2d 261, 264 (2d Cir. 1987).

982 F.2d 886, 872 n.6 (3d Cir. 1992); <u>United States v. Howard</u>, 63
F. Supp. 2d 728, 731–33 (E.D. Va. 1999).

Though the First Circuit does not appear to have addressed
this issue, the Fifth Circuit's approach strikes the court as
sound.  As that court reasoned in <u>Alford</u>, since "the government
may obtain a fresh speedy trial clock by simply waiting until
completion of the prosecution for the charges contained in the
original indictment and beginning a new prosecution on the
additional charges," bringing those additional charges through a
superseding indictment should have the same effect.  142 F.3d at
829.  Luedecke does not provide any authority to the contrary,
nor does he argue that the double jeopardy clause requires the
joinder of the sole offense charged in the original indictment
with the additional offenses charged in the instant one.  Indeed,
since a separate violation of 18 U.S.C. § 1844 occurs "[e]ach
time an identifiable sum of money is obtained by a specific
fraudulent transaction," the double jeopardy clause would not
require the joinder of Count I with Counts II and III, which
involve not only different transactions, but different accounts.
<u>United States v. Brandon</u>, 17 F.3d 409, 422–23 (1st Cir. 1994).

While the seventy–day period has elapsed on Count I by
virtue of its inclusion in the first indictment, the Speedy Trial
Act time has yet to run out on Counts II and III.  The Act

therefore requires the dismissal of Count I, but not of Counts II
or III.[7]  See Howard, 63 F. Supp. 2d at 731-33.

     B.   Whether Count I Should Be Dismissed With Prejudice

The question remains, however, whether Count I should be
dismissed with or without prejudice.  To answer this question,
the court must "consider, among others, each of the following
factors:  the seriousness of the offense; the facts and
circumstances of the case which led to the dismissal; and the
impact of a reprosecution on the administration of [the Act] and
on the administration of justice."  18 U.S.C. § 3162(a)(2).  The
circuit has also endorsed the consideration of "extraneous
matters . . . rationally related to the balancing objectives of
the tripartite test" set forth in the statute, including "items
such as the length of the delay and the prejudice to the
defendant stemming from the violation (or, conversely, the
absence of prejudice)."  United States v. Hastings, 847 F.2d 920,
924 (1st Cir. 1988); see also Barnes, 159 F.3d at 18.  Luedecke
argues that each of the statutory factors favors dismissal with
prejudice here.  The government takes the opposite view.

---

[7]Although the Sixth Amendment could theoretically provide an
independent basis for the dismissal of Counts II and III,
Luedecke does not make any such argument.  See note 1, supra.  In
any event, it is clear that no Sixth Amendment violation has
occurred.  See United States v. Santiago-Becerril, 130 F.3d 11,
21-22 (1st Cir. 1997).

First, Luedecke suggests that the indictment charges "essentially a property crime," causing a loss of less than $50,000.[8]  Mem. Supp. Def.'s Mot. Dismiss ¶ 28.  The government disagrees.  For purposes of considering whether to dismiss an indictment with prejudice under section 3162(a)(2), the circuit has treated bank fraud in violation of 18 U.S.C. § 1344 as a "serious offense," noting that the statute provides for a maximum penalty of thirty years' imprisonment.  United States v. Scott, 270 F.3d 30, 57 (1st Cir. 2001).  Indeed, in Scott, the circuit considered the bank fraud charges "serious" even though the restitution imposed as part of the defendant's sentence on those charges was only $35,550.  Id. at 53.  In accordance with Scott, then, the court finds the seriousness of the offense charged in Count I to weigh against a dismissal with prejudice.  This determination, in fact, cuts heavily against such a remedy, given the circuit's admonition "that, when the charged crimes are serious, only an equally serious delay can justify dismissal with prejudice."  Hastings, 847 F.2d at 929.

The parties also disagree over how to weigh the "facts and circumstances" which have necessitated the dismissal of Count I under the Act.  18 U.S.C. § 3162(a)(2).  "This aspect of the test focuses on the culpability of the delay-producing conduct . . . .

---

[8]Luedecke does not specify whether this figure serves as an estimate of the loss caused by the crimes charged in all three counts of the indictment, or just Count I.

sometimes the defendant may be to blame; other times, the government." Hastings, 847 F.2d at 925.  Though the parties are in agreement that the Speedy Trial Act violation here occurred as a result of the dismissal of the first indictment just before trial,[9] each side attributes the fault for this turn of events to the other.  Luedecke asserts that the government moved to dismiss the first indictment on the eve of trial because it was not ready to go forward on that charge.  For its part, the government maintains that it moved to dismiss for the purpose of "seek[ing] a superseding indictment that included charges addressing the entire scope of [Luedecke's] criminal conduct," not because it was unprepared for trial.  Obj. Mot. Dismiss at 7-8.

In assessing the "facts and circumstances" prong of section 3162(a)(2), "delay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice." Hastings, 847 F.2d at 925.  While securing a dismissal on pretextual grounds to avoid having to go to trial unprepared could qualify as an attempt to gain unfair prosecutorial advantage, the court sees nothing in the materials before it to suggest such chicanery here.  In its motion to

---

[9]The government does not argue that Luedecke's pre-trial detention by the state caused any delay in bringing him to trial under the first indictment, simply that the period of the detention is excludable.  See Part I, supra.

dismiss the first indictment, the government expressly stated that it intended "to offer the grand jury a superseding indictment that include[d] additional schemes to defraud other than that alleged in the current indictment."  Gov't Mot. Dismiss at 1.  Significantly, Luedecke did not object to the motion or otherwise dispute the government's representation at the time.[10] The government did, in fact, go on to procure such an indictment, which suggests that it was sincere in its stated intention.

In contrast, Luedecke has offered nothing to support his theory that the government was not ready for trial, beyond the last-minute timing of the motion to dismiss.  The government represented in the motion itself, however, that it had not sought a superseding indictment earlier "because it believed the parties, who were negotiating a plea, would resolve the issues in dispute."  Gov't Mot. Dismiss at 1.  While, again, Luedecke did not dispute this characterization at the time, he now states that "the parties never came close to reaching a plea agreement." Mem. Supp. Def.'s Mot. Dismiss ¶ 39.  Though the government disagrees, <u>see</u> Obj. Mot. Dismiss at 2-3 & n.4, the court will simply accept Luedecke's version at face value, rather than delving into the substance of plea negotiations.  <u>Cf.</u> Fed. R.

---

[10]The court acknowledges that it granted the motion within hours of its filing.  Nevertheless, Luedecke apparently did nothing to inform the court that he intended to object to the motion, nor did he move for reconsideration of the order.

Crim. P. 11(c)(1).  Without any other indication that the
government was unprepared for trial, Luedecke's claim that the
negotiations did not progress as far as the government lets on
does not support his theory that the motion was filed to spare
the government from having to go to trial unprepared, rather than
the legitimate goal of seeking a superseding indictment.

       That is not to say, however, that the government was
blameless in waiting until the eve of trial to seek dismissal of
the indictment.  Indeed, the court is somewhat troubled by the
government's complaint that Luedecke "never told the government
that he was insisting on a trial.  Rather, [defense] counsel
advised the court of that fact on the day before trial was to
begin and the government found out through the court."  Obj. Mot.
Dismiss at 7.  Like any other litigant, the government has an
obligation to be prepared to go to trial on the appointed date.
This obligation is not diminished by the fact that efforts to
resolve the case are still ongoing--as opposed to successfully
completed--as the time of trial approaches.  Given the absence of
a signed plea agreement, it might have been preferable for the
government to begin seeking a superseding indictment as its
primary option from the outset, rather than as a fallback in case
negotiations were not ultimately fruitful.

       Even if the government could fairly be called careless in
this regard, however, that determination would hardly necessitate

a dismissal with prejudice.  "Random negligence, while not to be condoned, is less blameworthy than purposeful misconduct or recurrent transgressions, and weighs less heavily in favor of banning reprosecution."  Hastings, 847 F.2d at 925; see also United States v. Duranseau, 26 F.3d 804, 808 (8th Cir. 1994). The "facts and circumstances" requiring the dismissal of Count I in this case therefore do not cut strongly in favor of dismissal with prejudice.

The parties also disagree over the final prong of the statutory inquiry, "the impact of a reprosecution on the administration of [the Act] and on the administration of justice."  Under this aspect of the test, the court must consider the effects of the choice to allow or bar reprosecution on "generalized public and private interests," particularly "the specific goal of assuring speedy trials."  Hastings, 847 F.2d at 926.

Here, because any reprosecution on Count I would presumably occur following the resolution of Counts II and III, which now have their own Speedy Trial clock, the reprosecution would duplicate much of the effort expended by the parties and the court in resolving the other charges.  Proceeding in this fashion would therefore disserve the public interest in preserving judicial and government resources.  Similarly, Luedecke would face the unhappy prospect of enduring two separate trials on

charges that, but for the Speedy Trial Act violation, would have
been tried together.

Because "the orderly administration of justice necessarily
is hindered to some degree whenever the Act is violated,"
however, the First Circuit has suggested that worse is necessary
to justify dismissal with prejudice under section 3162(a)(2).
Barnes, 159 F.3d at 17.  In Barnes, the defendant was convicted
after her trial proceeded despite her claim of a Speedy Trial Act
violation.  Id. at 9.  Though the circuit vacated the conviction
on Speedy Trial Act grounds, it nevertheless refused to order
dismissal with prejudice, reasoning that "a retrial should not
take more than one week (the first trial lasted four days), and
there is no reason to believe that reprosecution would otherwise
have a deleterious effect on the fair and efficient
administration of justice."  Id. at 17.  The same is true here:
while allowing the reprosecution of Count I would result in some
inefficiency and potential unfairness, the severity of these
consequences does not meaningfully exceed the impacts of any
Speedy Trial violation.

In addition, given that any wrongdoing by the government
here was negligent at worst, dismissal with prejudice strikes the
court as too draconian a sanction.[11]  Though, again, the

---

[11]Luedecke suggests that justice would be better served by a
state prosecution on fraud charges than by continued proceedings
in this court.  Luedecke, however, does not provide any support

20

government might have proceeded more cautiously, the court is confident that the simple dismissal of Count I without prejudice will effectively serve to deter such oversight in the future.  As the Supreme Court has observed, "[d]ismissal without prejudice is not a toothless sanction":  it requires the government to seek another indictment and causes other delays tending to "make reprosecution, even if permitted, unlikely."  United States v. Taylor, 487 U.S. 326, 342 (1988).  The impact of the reprosecution of Count I on the administration of justice and the administration of the Act, then, does not weigh in favor of dismissal with prejudice.  See Barnes, 159 f.3d at 17–18.

Finally, neither the length of the delay nor any prejudice to Luedecke cuts in favor of dismissal with prejudice.  Because the Speedy Trial clock on Count I did not run during the period between the dismissal of the first indictment and Luedecke's initial appearance on the present indictment, 18 U.S.C. § 3161(h)(6), the seventy–day period on that charge did not elapse until June 7, 2006, by Luedecke's own calculations.  See Mem. Supp. Def.'s Mot. Dismiss ¶ 25.  Given further that the filing of Luedecke's motion to dismiss stopped the clock again on June 28,

---

for the proposition that the possibility of a state prosecution arising out of the same conduct alleged in the federal indictment militates in favor of dismissal with prejudice; the theory has been rejected by another court in the First Circuit.  United States v. Dimott, 2006 WL 344761, at *5 (D. Me. Feb. 13, 2006), rep. & recomm. adopted, 2006 WL 752775 (D. Me. Mar. 21, 2006).

2006, 18 U.S.C. § 3161(h)(1)(F), and that the dismissal of Count I upon that motion will restart the clock, id. § 3161(d)(1), the delay totals only an additional twenty-one days of Speedy Trial time.  Delays of similar or greater duration have failed to result in dismissals with prejudice under the Act.  See, e.g., Barnes, 159 F.3d at 18 ("more than twice the extent statutorily permissible"); United States v. Johnson, 29 F.3d 940, 946 (5th Cir. 1994) (118 days); United States v. Wright, 6 F.3d 811, 816 (D.C. Cir. 1993) (17 days).

In any event, Luedecke has not even hinted at any prejudice he suffered from the Speedy Trial Act violation that occurred in this case, and none is apparent to the court.  "One reason, of course, is that so brief a delay is unlikely to . . . materially hamper a defendant."  Hastings, 847 F.2d at 929.  Indeed, because Luedecke was detained by New Hampshire authorities during most of the running of the Speedy Trial period on Count I, until he was brought into federal custody following his arraignment on the present indictment, the delay has not prolonged his pre-trial detention.  Cf. Howard, 63 F. Supp. 2d at 733.  The First Circuit has weighed the absence of prejudice to the defendant heavily against dismissal with prejudice.  Barnes, 159 F.3d at 18; Hastings, 847 F.2d at 929.

Having considered both the statutory criteria set forth in 18 U.S.C. § 3162(a)(2) and the additional criteria endorsed by

the First Circuit, the court concludes that dismissal of Count I

<u>without</u> prejudice is the appropriate remedy for the Speedy Trial

Act violation in this case.


<u>Conclusion</u>

For the foregoing reasons, Luedecke's motion to dismiss

(document no. 9) is GRANTED as to Count I of the indictment,

which shall be dismissed without prejudice.  The motion is

otherwise DENIED.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

July 20, 2006

cc:  Timothy M. Harrington, Esquire
     Donald A. Feith, Esquire
     U.S. Probation
     U.S. Marshal

23